1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,

11          Respondent,                    No. CR S-02-418 GEB GGH P

12          vs.

13   FERNANDO LOPEZ-CUEVAS,

14          Movant.                        FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17          Movant is a federal prisoner proceeding pro se with a motion to vacate, correct or

18   set aside his sentence pursuant to 28 U.S.C. § 2255.  Doc. 176.  Movant challenges his 2004

19   conviction for conspiracy to posses with intent to distribute and possession with intent to

20   distribute, methamphetamine.  He was sentenced to 292 months.  Respondent filed an opposition

21   but movant, despite requesting an extension, did not file a reply.[1]  The motion raises twenty-four

22   claims of ineffective assistance of counsel concerning three separate attorneys who represented

23   movant at different stages of the proceedings.  Many of the claims asserted are inconsistent with

24   each other.  For the following reasons, movant's motion should be denied.

25   _____

26          [1] Movant's traverse filed 16 months late was stricken.  Doc. 209.

                                    1

II.  Factual Background

The court has independently reviewed the record and finds respondent's summary of the offense conduct to be accurate.  Accordingly, it is adopted below.

The facts of this case involve a "buy-bust" operation in which movant and his co-defendant agreed to sell an undercover officer six pounds of methamphetamine.  Co-defendant Mr. Ontiveras brokered the deal; movant drove the load car.

On September 3, 2002, a confidential informant for the Sacramento County Sheriff's Department finalized arrangements with Mr. Ontiveras for Mr. Ontiveras to sell six pounds of methamphetamine, for $4,000 per pound, to the informant's "partner," actually the undercover detective ("UC").  Reporter's Transcript (RT) at 113-14, 256.  Mr. Ontiveras was to make $500 per pound on the deal.  RT at 257.  Mr. Ontiveras told the informant that the supplier would be coming from out of the area to deliver the methamphetamine.  RT at 119, 257.

The UC directed the informant, who was with Mr. Ontiveras at the time he informed the UC of the arrangements that had been made, to go with Mr. Ontiveras to a specific location to meet him.  RT at 116.  The UC told the informant that the plan was for the load car to meet up with the informant's car.  RT at 115, 119.  The load car would then follow the informant's car to where the UC purportedly lived for payment to occur.  Id.

The UC arranged for police surveillance of the meet location.  RT at 116.  As surveillance units watched, the informant and Mr. Ontiveras met with movant who was driving a purplish Honda.  RT at 119, 127, 258.  They met at 24th and Florin.  RT at 257.  Mr. Ontiveras introduced movant as his cousin to the informant, and Mr. Ontiveras indicated that movant had brought the methamphetamine.  RT at 267.  Movant asked Mr. Ontiveras if he was ready with the money, and Mr. Ontiveras indicated that he was ready, too.  RT at 260.

The UC then called the informant and told him to relay to Mr. Ontiveras and movant that they should drive to another location, 21st and Florin, to meet with him and consummate the transaction.  RT at 128, 261.  Movant was driving right behind Mr. Ontiveras.

II.  <u>Factual Background</u>

The court has independently reviewed the record and finds respondent's summary of the offense conduct to be accurate.  Accordingly, it is adopted below.

The facts of this case involve a "buy-bust" operation in which movant and his co-defendant agreed to sell an undercover officer six pounds of methamphetamine.  Co-defendant Mr. Ontiveras brokered the deal; movant drove the load car.

On September 3, 2002, a confidential informant for the Sacramento County Sheriff's Department finalized arrangements with Mr. Ontiveras for Mr. Ontiveras to sell six pounds of methamphetamine, for $4,000 per pound, to the informant's "partner," actually the undercover detective ("UC").  Reporter's Transcript (RT) at 113-14, 256.  Mr. Ontiveras was to make $500 per pound on the deal.  RT at 257.  Mr. Ontiveras told the informant that the supplier would be coming from out of the area to deliver the methamphetamine.  RT at 119, 257.

The UC directed the informant, who was with Mr. Ontiveras at the time he informed the UC of the arrangements that had been made, to go with Mr. Ontiveras to a specific location to meet him.  RT at 116.  The UC told the informant that the plan was for the load car to meet up with the informant's car.  RT at 115, 119.  The load car would then follow the informant's car to where the UC purportedly lived for payment to occur.  Id.

The UC arranged for police surveillance of the meet location.  RT at 116.  As surveillance units watched, the informant and Mr. Ontiveras met with movant who was driving a purplish Honda.  RT at 119, 127, 258.  They met at 24th and Florin.  RT at 257.  Mr. Ontiveras introduced movant as his cousin to the informant, and Mr. Ontiveras indicated that movant had brought the methamphetamine.  RT at 267.  Movant asked Mr. Ontiveras if he was ready with the money, and Mr. Ontiveras indicated that he was ready, too.  RT at 260.

The UC then called the informant and told him to relay to Mr. Ontiveras and movant that they should drive to another location, 21st and Florin, to meet with him and consummate the transaction.  RT at 128, 261.  Movant was driving right behind Mr. Ontiveras.

RT at 129.

Eventually both cars were stopped. RT at 130-31. As the police pulled over the informant and Mr. Ontiveras, Mr. Ontiveras said that they were "screwed." RT at 261.

A search of movant's Honda revealed six pounds of methamphetamine hidden beneath the spare tire lid in the trunk. RT at 172, 185, 187. The methamphetamine was found with Bounce laundry sheets, in an apparent attempt to mask the odor of the drugs. RT at 170-71. Also in movant's car was paperwork bearing his name, including a receipt for an auto part purchased by movant on May 21, 2002 and a notice to appear for a traffic violation. RT at 210-16.

The passenger of movant's car, Alejandro Hurtado, made the following statement to the police at the scene, which was read to the jury. In that statement, Mr. Hurtado said the following:

> [Movant] told me that we were [driving to Sacramento together] to meet a friend. He did not say anything about drugs. The drugs you found in the car are not mine, they must belong to [movant].... When we got to Sacramento, we were doing a lot of waiting around. I became suspicious, thinking that he was up to something. I kept asking [movant] what we were doing, but he just kept telling me that we were waiting for a friend. [Movant] talked on his cell phone twice while we were here. I did not hear his whole conversation, but he was saying things like, wait a little while, and I'll be right there. As we got pulled over, [movant] got very nervous, and I knew at that time that he had something.

RT at 220-21. The parties also agreed that the following statement by movant, made by signed declaration on January 15, 2003, be read into the record:

> On September 3, 2002, I picked up my friend Alejandro Hurtado in Vallejo to accompany me to Sacramento. As far as I know, Alejandro Hurtado had no knowledge of the methamphetamine that was found in the vehicle in which we were arrested on September 3, 2002.

RT 221-22. The jury never saw this declaration in written form. RT at 568-69.[2]

\\\\

---

[2] Charges against Hurtado were dismissed on January 17, 2003. Doc. 21.

Movant took the stand and testified in his own behalf.  He was cross-examined extensively by the prosecution.  RT at 409-37.  He testified that he took the car from a tow yard to sell it in Sacramento, although he didn't have the title with him and didn't remove his personal effects from the car.  Id.  He testified that, at the tow yard, an unknown person took the car for 40 minutes before giving it back to him, but movant didn't think to ask who the man was or what he was doing.  Id.  Movant was selling the car for his sister but had no idea how much money he was supposed to get for it.  Id.  He was going to give the money to another cousin of his in Sacramento, from whom he expected a ride back to the Bay Area, although he hadn't even contacted this cousin to ask for a ride.  Id.  He didn't mention to the police at the time of his arrest anything about the mystery man who took the car and washed it.

The government did not mention either Mr. Hurtado's statement or the movant's declaration about Mr. Hurtado in closing argument or rebuttal.

As it turned out, although petitioner was eligible for a 20 year mandatory minium to life imprisonment sentence as he had been charged with trafficking in a methamphetamine mixture in excess of 500 grams and had a prior conviction[3], for whatever reason, the jury was not provided with the special verdict form which would have proven that amount of methamphetamine mixture.  See RT (May 14, 2004) at 1-2.  Thus, petitioner's maximum possible sentence was 30 years (20 years plus 10 for a prior conviction).  See 21 U.S.C. § 841(b)(1)(C).  Thus, many of petitioner's allegations herein that he was unaware that he was exposed to a 20 year mandatory minimum are inconsequential.

At sentencing, the trial court also found that movant committed perjury and obstructed justice when he testified at trial.

\\\\\
\\\\\
\\\\\
\\\\\

---

[3]The Information charging the prior was filed on February 25, 2003.

III.  Discussion

Legal Standard

The test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 688.  To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  Id. at 690.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id.  "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised  acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard.  Williams v. Taylor , 529 U.S. 362, 391-93, 120 S. Ct. 1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

A claim of ineffective assistance of appellate counsel utilizes the same Strickland standard that is applied to trial counsel.  Smith v. Robbins, 528 U.S. 259, 287, 120 S. Ct. 746, 765 (2000).

Hearing to Appoint New Counsel

On the second day of trial, February 11, 2004, an in camera hearing was held with the trial court, movant and movant's counsel regarding movant's request for new counsel to be appointed.  The prosecution and the jury were not present.  In that hearing, movant and trial

counsel, Gilbert Roque, spoke about several issues that are pertinent to many of movant's claims below and refute many of movant's assertions.[4]  It should also be noted that movant failed to raise many of the issues at the hearing that he now raises in the instant motion.  Set forth below are several excerpts from that hearing:

> Movant:  Today, when I got here, and yesterday and today I told [Roque] that I was thinking that I would testify.  And he told me, no, it would be better not to, that it would be better not to testify.  And he explained to me about other clients that he's had who sometimes get confused or they get nervous.
>
> [. . .]
>
> Roque:  The problem with raising the issue of character, Judge, as the Court knows, is that it opens up a Pandora's Box with regard to the prosecution; they can attack character by bringing in [movant's] prior record.  And [movant] does have a prior record, of which the Court knows since a notice of the prior was filed in this case.  Therefore, I had to talk to [movant] about using Mr. Edwards [the character witness] with the knowledge that his record would come out.  And if his record was going to come out, and if he didn't mind that record coming out, then I discussed with him the fact of his testimony.
> Previously I had indicated to him that generally, as a rule, I don't necessarily like my clients to take the stand unless they're prepared properly to be cross-examined, and are able to cross-examine, because my experience has been that many clients, if they choose to testify, could get tripped up based on their lack of experience in the courtroom.
>
> [. . .]
>
> And then I went through the options, that if he did testify then his record would come out, and at that point then we could have Mr. Edwards - - Mr. Edwards is the employer, Judge – have Mr. Edwards testify and he can talk about his character, and there wouldn't be as much prejudice if Mr. Edwards understood that [movant] had the record and still felt that he was of good character. If [movant] chose not to testify, then his record wouldn't come in

---

[4]The in camera hearing before Judge Burrell was not transcribed.  However, as noted in the order requiring the transcript to be prepared and filed under seal for this § 2255 proceeding, movant has waived any attorney client privilege.  Assertions related to what his attorney did and said are no longer privileged.  Therefore, the undersigned has quoted freely from the transcript in this public Findings and Recommendations except where to do so would prejudice movant if this case were to be retried, i.e., admissions as to the facts of the crime.  See Bittaker v. Woodford, 331 F.3d 715 (9th Cir. 2003).

and he had to decide whether he wanted me to call Mr. Edwards anyway, knowing that if Mr. Edwards testified his record would come in. So, that's with regard to that point.

[. . .]

Roque: [Movant] asked me to try to get a deal from the prosecutor. I did try to get a deal, and conveyed that deal to the prosecutor. The prosecutor gave me a written rejection of [movant's] deal to the prosecution. In essence, it was our offer, because our offer was lower than what the guidelines would be. [Movant] said, well, I'm willing to accept this amount. I told him, well, I don't know how we're going to get that. But I did talk to the prosecutor, and I have written documentation, which I showed [movant] that I had where [the prosecution] said I understand that this is what you're asking, we're rejecting it, and let's move forward. And if your client wants to do other things, we're willing to listen to other things, but as far as your offer to me, we reject that. So, the offer that - - or the deal that [movant] is referring to was, in fact, conveyed to the prosecution, and it was rejected.

[. . .]

[Movant] is very, very unhappy because I was not able to get the 10-year deal that he was eventually willing to accept, and now he's looking at 20 years minimum mandatory because of the prior. And he's seen the case unfold, and I believe that's stressing him out, and I understand that.

RT, Sealed In Camera Hearing at 17-23.

Claim A[5]

Prior to being prosecuted in federal court, movant was arraigned in state court and appointed counsel. The state court eventually dismissed the charges against movant due to the federal complaint and possible indictment. Movant claims that his appointed counsel in state court was ineffective for not taking the necessary steps to keep movant's case in the state court and away from federal prosecution.

---

[5] None of these claims were raised on direct review, however claims for ineffective assistance of counsel are not subject to procedural default. Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690 (2003) (holding that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal").

Movant argues that state appointed counsel did not discuss any of movant's options to keep the case out of federal court. However, movant does elucidate what were the 'options'. Movant argues that state counsel failed to speak with the district attorney and persuade the district attorney to keep the case in state court. Though, it is not clear if the district attorney had any authority to stop the federal prosecution. Movant maintains that had state counsel informed him of the possibility of a federal prosecution movant would have made a better decision regarding cooperating. Yet, movant concedes that he is unaware if any plea offer was actually made to his state counsel.

With respect to this claim, movant merely speculates regarding possible scenarios none of which will lead to relief. See Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).

More importantly, movant's claim does not appear to be cognizable under a § 2255 action, as movant challenges his counsel's conduct in state court that resulted in the state case being dismissed. Movant does not cite any authority that would entitle him to relief regarding the actions of his state counsel prior to the federal case. Regardless, movant's claim is based on pure speculation and is meritless as there is no indication that counsel was ineffective which could lead to any prejudice suffered by movant. This claim should be denied.

Claim B

Movant alleges that his first defense counsel, Assistant Federal Defender Linda Harter, was ineffective for failing to explain the legal consequences of filing the declaration concerning co-defendant Hurtado.

The declaration stated:

On September 3, 2002, I picked up my friend Alejandro Hurtado in Vallejo to accompany me to Sacramento. As far as I know, Alejandro Hurtado had no knowledge of the methamphetamine that was found in the vehicle in which we were arrested on September 3, 2002.

RT 221-22.

As a result, charges were dropped against Hurtado.  Movant states that by signing the declaration he was implicitly admitting knowledge of the drugs and ridding himself of the only witness who could corroborate movant's story concerning the car to which he testified at trial.[6]  Movant states that counsel Harter was ineffective for failing to explain these possible consequences.  However, Harter stated in a declaration[7] that it was movant's decision to provide this declaration and he demanded that a meeting be arranged so he could tell the government that Hurtado was not involved in the underlying offense.  Opposition, Exh. 1B, Declaration of Linda Harter.  Harter further stated that she would have certainly told movant that anything he said during the interview could be used against him should he decide to go to trial and testify.  Id.  A letter by the prosecutor was also translated for movant which stated anything he said during the meeting concerning Hurtado could be used against movant in trial or at sentencing.[8]  Id.

For purposes of this instant motion, the undersigned will assume the very improbable: that counsel did not personally advise plaintiff that making this declaration could have adverse consequences.  Movant asserts that by providing this declaration he was forced to proceed with trial without Hurtado as an alibi witness.  Yet, the decision to provide the declaration is independent of Hurtado being unavailable to testify on movant's behalf.  Had the declaration not been provided, Hurtado could have still been a defendant, and there is no guarantee (or even reasonable possibility) that Hurtado would choose to testify on movant's behalf, nor could he be compelled to testify.  That Hurtado was later unavailable to testify once he was dismissed cannot be attributed to counsel's alleged actions of not advising movant regarding consequences of the declaration.  In addition, Hurtado's prior statement to the police, his probable testimony, would not have been beneficial to movant.  Hurtado stated:

---

[6] Hurtado was later deported and was unavailable to testify.

[7] Attorney/client privilege has been waived.  Doc. 186.

[8] This letter does not seem to be in the court file.

9

[Movant] told me that we were [driving to Sacramento together] to meet a friend. He did not say anything about drugs. The drugs you found in the car are not mine, they must belong to [movant].... When we got to Sacramento, we were doing a lot of waiting around. I became suspicious, thinking that he was up to something. I kept asking [movant] what we were doing, but he just kept telling me that we were waiting for a friend. [Movant] talked on his cell phone twice while we were here. I did not hear his whole conversation, but he was saying things like, wait a little while, and I'll be right there. As we got pulled over, [movant] got very nervous, and I knew at that time that he had something.

RT 220-221.

While movant contends that he was unaware that providing the declaration could reflect poorly against him, a plain reading of the declaration contradicts this contention. The declaration was not a complex legal document, it was a simple statement that Hurtado was unaware of the drugs in the car and movant did not need an attorney to understand the nature of the declaration. Moreover, the declaration was supported by movant's testimony at trial, that he also had no knowledge there were drugs in the car.[9]

In considering motions brought pursuant to § 2255, a district court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.[10] A district court has the discretion to forego an evidentiary hearing and instead rely on the record, which may be supplemented by: discovery and documentary evidence, the judge's own notes and recollection of the trial, and common sense. Shah v. United States, 878 F.2d 1156, 1159 (9th Cir. 1989).

The undersigned notes that movant did not timely file a reply to address Harter's declaration that movant insisted that the Hurtado declaration be prepared. In addition, movant was found to have committed perjury at trial and many of his claims in the instant motion are contradicted by his own statements and counsel's statements at the in camera hearing.

---

[9] Also, to the extent that petitioner believes that the declaration incriminated him, the undisputed evidence in this case is that he *was* advised as to this very fact by the prosecutor's letter. Yet, movant went ahead and executed the declaration.

[10] Movant did not request an evidentiary hearing in his motion.

1     Under all of these circumstances, the undersigned finds movant's claim is

2   palpably incredible in light of the record.  Therefore, movant is not entitled to an evidentiary

3   hearing and for all the reasons discussed above, the instant claim is without merit and should be

4   denied.  See U.S. v. Espinoza, 866 F.2d 1067, 1069 (1988) (quoting Watts v. United States, 841

5   F.2d 275, 277 (9th Cir. 1988) (no evidentiary is necessary when the issue of credibility can be

6   "'conclusively decided on the basis of documentary testimony and evidence in the record.'")

7          Claim C

8          Movant next argues that first federal defense counsel, Harter, and later trial

9   counsel, Gilbert Roque, were ineffective for failing to move to suppress the evidence seized from

10  the car stop.

11         Based on the evidence presented any such motion raised by counsel would have

12  failed.  The Ninth Circuit has held that failure to raise a meritless legal argument does not

13  constitute ineffective assistance of counsel.  James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994).  At

14  trial movant testified that he consented to the search of his car.  RT at 405.  Movant also admitted

15  that he consented to the search of the car in a declaration that he signed.  Doc. 43, Declaration at

16  ¶4.  It now appears that movant could be arguing that he gave consent to the search of his car but

17  not his trunk.  If this is in fact movant's argument it is still meritless.

18         As discussed above, the facts surrounding the stop and the undercover law

19  enforcement involvement provided more than enough reasonable suspicion to pull over the car.

20  Nor was there a prolonged detention as a detective and his drug detection dog, named Bullet,

21  arrived a few minutes after the stop.  RT at 163,166.  The Supreme Court held that use of a

22  trained drug detection dog during a traffic stop does not implicate a legitimate Fourth

23  Amendment privacy expectation.  See Illinois v. Caballes, 543 U.S. 405, 409, 125 S.Ct. 834

24  (2005).  Once the drug detection dog indicated the presence of drugs in the trunk of the car (RT

25  at 169-70), probable cause existed to then search the trunk.  U.S. v. Garcia, 205 F.3d 1182, 1187

26  (9th Cir. 2000).

1    Thus, movant has failed to show that counsel was ineffective for failing to

2    challenge the seized evidence and this claim should be denied.

3    <u>Claims D & E</u>

4    In claim D movant alleges that Harter and Roque were ineffective for failing to

5    explain the sentencing guidelines and had movant known his potential exposure he would not

6    have proceeded to trial.  In claim E movant claims both counsels were ineffective for failing to

7    advise movant of the gain of pleading guilty in order to benefit from accepting responsibility.

8    With respect to both of these claims both counsels have filed declarations that they spoke with

9    petitioner about these issues.  For purposes of this motion the court will assume the accuracy of

10   movant's allegations.

11   With respect to claim D, movant merely asserts that had he known about the

12   sentencing guidelines he never would have proceeded to trial.  However, movant does not state

13   that he was offered any plea bargain that would have lessened his exposure.[11]  Movant has failed

14   to show how he was prejudiced by going to trial.[12]  Had movant simply pled guilty to the charges

15   there is no indication that his sentence would have been any less than what he received after

16   being found guilty at trial.[13]  In his motion, movant states that the applicable guideline range was

17   292-365 months and he was sentenced to 292 months.  Motion at 2.  Moreover, in the in camera

18   hearing during trial, Roque spoke about his discussions with movant about the 20 year mandatory

19

20   [11] Counsel Harter's declaration seems to indicate there may have been a plea offer,
     however no information has been provided concerning the offer and how much prison time
21   would have been involved.  Opposition, Exh. 1B, Declaration of Linda Harter.  Of course, it is
     not counsel's obligation to provide evidence for petitioner, when providing information
22   regarding claims that counsel was ineffective.  Moreover, at the in camera hearing it was
     apparent that the plea deal movant was willing to accept was rejected by the prosecution.
23

24   [12] That petitioner was also found guilty of committing perjury and obstructing justice at
     trial will be addressed separately in claim K.

25   [13] Respondent notes that had movant not received the obstructing justice enhancement the
26   bottom sentencing guideline range was 235 months.  Petitioner was already facing a 240 month
     mandatory minimum.  Opposition at 32.

minimum and movant was present at the hearing so was clearly aware of his possible sentence.[14]

As described below in several other claims, movant argues that he should have just pled guilty to avoid trial. Yet, each variation of this argument suffers from the same fatal flaw that petitioner cannot show prejudice.[15] There is no evidence of any plea that would have resulted in a shorter sentence, and petitioner's claims simply reflect his unhappiness with being found guilty at trial. Harter has also indicated that when she spoke with movant on October 11, 2002, he stated he would only accept a plea offer of five years or less. Opposition, Exh. 1A, Declaration of Linda Harter. In fact, at the in camera hearing Roque stated that attempts to obtain a plea bargain that would lessen movant's sentence were rejected by the prosecution. Thus, Roque tried to obtain a plea that would satisfy movant, but was unable to. That the prosecution would not accept a plea that met movant's standards does not demonstrate that counsel was ineffective.

Moreover, movant testified at trial and professed his innocence, but now he is steadfast that he wanted to plead guilty. But see letter filed August 25, 2003 in which petitioner alleged his counsel was using "unpresident (sic) tactic to induce a plea."[16] This shows the extent to which petitioner will now say anything, regardless of its truth, and no matter how inconsistent with past statements, in order to obtain an advantage herein.

In Jackson v. U.S., 248 F.Sup.2d 652 (E.D. Mich. 2003), the defendant alleged ineffective assistance of counsel because his counsel had failed to inform defendant of a plea offer. Defendant testified in his defense at trial and professed his innocence, but was convicted

---

[14]As earlier noted, because the jury was not given the opportunity to find the amount of methamphetamine trafficked, the 20 year mandatory minimum fell out of the calculation.

[15]The undersigned will not consider any argument by movant that by pleading guilty he would have avoided to the temptation to lie at trial and thus have his sentence enhanced for having lied. A counsel does not have to anticipate that his client will commit perjury when assessing the possible sentence if one does go to trial.

[16]This letter was sealed as it implicated at that time the attorney-client privilege. Because that privilege has been waived in this § 2255 motion, the undersigned quotes from the letter.

13

and found to have committed perjury and obstructed justice at trial. Id. The court stated:

> Given Petitioner's proclivity to lie to this Court, the Court will not now entertain his present self-serving statements in his affidavit as true. Since he lied to the Court at trial, he is just as likely, if not more so, to lie to the Court now. Thus, Petitioner's allegation, supported merely by his own self-serving statements, are "inherently incredible." [Citations omitted] . . .
>
> Alternatively, even if trial counsel did not inform Petitioner of the plea agreement (i.e., trial counsel's performance was deficient), Petitioner has failed to establish that there is a reasonable probability that the result of the preceding would have been different. [Citation omitted]. In other words, Petitioner has not shown a reasonable probability that he would have accepted the plea agreement. At any plea hearing, Petitioner would have to provide a factual basis for his guilt. However, at trial, Petitioner testified to his innocence while under oath. Had Petitioner not testified, the situation would have been different, but, as mentioned supra, he unequivocally and categorically denied that he committed any of the charged offenses. Petitioner cannot have it both ways. He cannot tell the jury under oath that he is innocent and claim now that he would have told the Court under oath that he was guilty.

Id. at 656-57.

Petitioner's credibility is hopelessly damaged. For all these reasons, movant has failed to demonstrate any prejudice from not being informed of the guidelines and claim D should be denied.

In claim E movant alleges that Harter and Roque failed to advise him of the gain of pleading guilty in order to benefit from accepting responsibility. For this claim it appears that movant's sentence would have been less than what he received after trial. Though, both attorneys have indicated in their declarations that they discussed this option with plaintiff. As stated before, Harter has indicated that when she spoke with movant on October 11, 2002, he stated he would only accept a plea offer of five years or less. Opposition, Exh. 1A, Declaration of Linda Harter.

Under the U.S. Sentencing Guidelines a defendant who "clearly demonstrates acceptance of responsibility for his offense" may have his offense level decreased by two levels. U.S.S.G. § 3E1.1. Under certain circumstance the government may move for the decrease of one additional level. Id. Thus, had movant pled guilty to all charges without a plea agreement, he would have at most received a two-level downward adjustment in his offense level, as it would

be highly unlikely that the prosecution would have moved for an additional level decreased for a defendant who did not cooperate.  In addition, movant was still eligible for a two-level downward adjustment in his offense level under the sentencing guidelines, even after he proceeded to trial and was found guilty, if he clearly demonstrated acceptance of responsibility for his offenses.  In the instant case, movant did not receive this reduction as it was found he obstructed justice at trial.

In considering motions brought pursuant to § 2255, a district court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.[17]  A district court has the discretion to forego an evidentiary hearing and instead rely on the record, which may be supplemented by: discovery and documentary evidence, the judge's own notes and recollection of the trial, and common sense.  Shah v. United States, 878 F.2d 1156, 1159 (9th Cir. 1989).  The undersigned notes that this exact claim was brought by movant's co-defendant and cousin, Ontiveras, in his § 2255 motion and was denied.  See  U.S. v. Ontiveros, 2010 WL 445041 (E.D. Cal. 2010).

While movant now claims that he would have pled guilty, apparently without an agreement, he does not deny or discuss the declarations from two separate attorneys who represented him and stated they discussed the acceptance of responsibility aspect of the sentencing guidelines.  After respondent filed an answer to the motion,[18] movant requested an extension to file a reply, on May 3, 2010, which was granted, but movant never filed a timely reply.[19]  Thus, movant has not addressed Harter's and Roque's statements or Harter's statement that movant would only accept a plea deal of five years or less.  Also, movant has failed to reconcile his testimony at trial where he professed his innocence and stated he was unaware of

---

[17] Movant did not request an evidentiary hearing in his motion.

[18] The opposition also noted the lack of support for many of the claims, yet plaintiff still did not file a reply to provide additional information.

[19] Movant filed a reply 16 months later, that was stricken.

the drugs in the car.  Moreover, in claim F, movant states that he repeatedly informed counsel that he wanted to plead guilty because he did not want to risk the punishment that would result from proceeding to trial.  Motion at 19.  This statement indicates that prior to trial, movant was aware of the risks that could result in being found guilty after trial.  At the in camera hearing Roque stated that attempts to obtain a plea bargain that would lessen movant's sentence were rejected by the prosecution.  Thus, Roque tried to obtain a plea that would satisfy movant, but was unable to.  It appears that movant only wanted a plea that would provide a 10 year sentence, but the prosecution refused.  Movant's claim in the instant motion is contradicted by these statements and raise insurmountable questions about movant's credibility.

Under all of these circumstances, the undersigned finds movant's claim that he would have pled guilty for the acceptance of responsibility benefit to be suspect and not credible.  Therefore, movant is not entitled to an evidentiary hearing and the instant claim is without merit and should be denied.  <u>See</u> <u>U.S. v. Espinoza</u>, 866 F.2d 1067, 1069 (1988) (quoting <u>Watts v. United States</u>, 841 F.2d 275, 277 (9th Cir. 1988) (no evidentiary is necessary when the issue of credibility can be "'conclusively decided on the basis of documentary testimony and evidence in the record.'")

<u>Claims F&G</u>

Movant next asserts that he wanted to plead guilty, but trial counsel, Roque, misled him and stated that the government's case was weak.  Again, <u>but</u> <u>see</u> letter filed August 25, 2003 in which petitioner was objecting to being coerced into making a plea.  As with claim D above, movant has not presented evidence that any plea was offered and he could have received a shorter sentence had he pled guilty.  From the transcript set forth above, it appears that movant only wanted a plea that would provide a 10 year sentence, which the prosecution would not agree to.  As with claim D above, movant cannot demonstrate prejudice pursuant to <u>Strickland</u>, and this claim should also be dismissed.

\\\\

1    In claim G, movant alleges that Roque misled him to believe the informant would

2  not testify at trial so movant should proceed to trial.  Similarly, movant cannot show any

3  prejudice if his accusations are true.  Simply saying he wished he had pled guilty which would

4  have resulted in essentially the same sentence does not present a viable ineffective assistance of

5  counsel claim.

6        Claim H

7        Movant states that Roque led movant to believe that he could not plead guilty

8  unless his co-defendant also pled guilty.  Movant contends that counsel was ineffective for

9  failing to inform movant that he could plead guilty independent of his co-defendant.  Assuming

10 Roque committed this error, it is difficult to believe that movant was unaware that he could plead

11 guilty independent of his co-defendant and had to proceed to trial if his co-defendant was

12 proceeding to trial.  Movant had four separate prior criminal cases that led to jail or prison time,

13 and was at least somewhat knowledgeable about the criminal justice system.  Regardless, as

14 stated before, movant cannot show prejudice in that any plea would have resulted in a different

15 sentence.  Therefore, this claim should be denied.

16       Claim I

17       Plaintiff next alleges that Roque was ineffective for failing to adequately

18 investigate the whereabouts of Hurtado after he had been deported so Hurtado could testify.  As

19 previously stated, Hurtado's statement to the police seems to implicate movant in the crime.

20 Hurtado stated:

21       [Movant] told me that we were [driving to Sacramento together] to meet a friend.
         He did not say anything about drugs.  The drugs you found in the car are not mine,
22       they must belong to [movant].... When we got to Sacramento, we were doing a lot
         of waiting around.  I became suspicious, thinking that he was up to something.  I
23       kept asking [movant] what we were doing, but he just kept telling me that we
         were waiting for a friend.  [Movant] talked on his cell phone twice while we were
24       here. I did not hear his whole conversation, but he was saying things like, wait a
         little while, and I'll be right there.  As we got pulled over, [movant] got very
25       nervous, and I knew at that time that he had something.

26 RT 220-221.

Movant has failed to demonstrate that any testimony of this witness would have helped his case. Movant has not even stated what Hurtado would have testified to, other than the statement that was admitted. In fact, it appears that the witnesses' testimony would have been detrimental to movant's case. Movant has failed to show that counsel was ineffective let alone that he suffered any prejudice. Movant's mere speculation is insufficient and this claim should be denied.

Claim J[20]

Movant also asserts that Harter and Roque were ineffective for failing to explain the importance of 21 U.S.C. § 851, which serves to increase a mandatary minimum to 20 years. (Actually the mandatory minimum sentence to which petitioner could have been exposed appears in 21 U.S.C. § 841 (b)(1)(A)). Movant states he would have cooperated with the government and agreed to a plea bargain. First, as it turned out, petitioner was not subject to a 20 year mandatory minimum. Moreover, this claim is similar to several other of plaintiff's claims and as stated before, movant has presented no evidence of a plea offer or potential cooperation that would have lessened his sentence and avoided the operation of 21 U.S.C. § 851[841(b)(1)(A)]. It is also evident that the prosecution rejected any shorter pleas and that movant was aware of the mandatory minimum of 21 U.S.C. § 841(b)(1)(A), as his minimum prison term to which he was potentially eligible at the time was discussed at the in camera hearing and movant did not voice any surprise. Movant's conclusory allegations without any support will not warrant relief. See Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).

\\\\

\\\\

---

[20] In movant's motion this claim is incorrectly labeled as "I."

1    Claim K

2         Petitioner next alleges that trial counsel never explained or advised petitioner on

3    his right to testify or on the consequences if the judge did not believe his testimony or that if

4    petitioner testified the prosecution could introduce his prior criminal history.  Roque refutes this

5    claim and states he provided the necessary information.  As set forth in the in camera hearing,

6    Roque repeatedly advised movant about the risks of testfying.  After movant was found guilty the

7    trial court stated:

8              It is unfortunate, but clear, that [movant] committed perjury when he testified
               during the trial.  He made up things, he created a story that was incredible, and
9              obviously not only disbelieved by the jury, but disbelieved by me.  There are so
               many facets of his story that constitute perjury that it would take a considerable
10             period of time to mention all of them.  I will make the perjury finding.

11   RT: Judgement and Sentencing at 13-14.[21]

12        The trial court found that movant obstructed justice and therefore applied a

13   sentencing enhancement.  Id. at 13.  To the extent movant argues that counsel never advised him

14   not to lie when he testified, movant's argument is frivolous.  Counsel does not have to advise

15   clients of every common and obvious aspect of a criminal trial and not lying is rather understood.

16   A client is assumed to have some common sense.  Assuming counsel failed to advised a client

17   not to yell obscenities at the jury, if a client were to do that, it would not result in the counsel

18   being found ineffective.

19        Movant also alleges that he would not have testified had he known that the

20   government could introduce his prior conviction for possession and sale of drugs, though this

21   conflicts with movant's other statements that he was innocent and had no connection with the

22   drugs in his car.  In addition, Roque states that he advised movant he would be cross examined

23   regarding his criminal history, *and this clearly, expressly was made known to movant during the*

24   *in camera hearing.*  "And then I went through the options, that if he did testify then his record

25   _____

26        [21] It also seems that many of movant's claims in the instant motion are contradicted by the
     trial record.

would come out..." RT *In Camera* hearing, February 11, 2004, at 21. Petitioner knew before trial that if he testified, his record could be used against him.

Regardless, assuming that movant's allegations are accurate, he has failed to demonstrate any prejudice. Had movant not testified he has failed to show that the result of the trial would have been any different. Without knowledge of his prior drug charge, there was still evidence of the confidential informant and the six pounds of methamphetamine found in movant's car that was sufficient for the jury to find movant guilty. To the extent movant argues he would have pled guilty, as with the other claims he has failed to demonstrate that pleading guilty without a deal would have resulted in a different sentence. For all these reasons, these claims should be denied.

Claim L

Movant also contends that Roque was ineffective for erroneously advising movant the day before trial and the day of trial that he could not plead guilty because witnesses had already been called and the trial was scheduled to commence. As with movant's other related claims, he has failed to show that he was prejudiced by going to trial versus simply pleading guilty without a deal just prior or during trial.

Claim M

Movant states that Roque was ineffective for failing to object to movant being shackled at trial. Movant's legs were restrained during trial, except for jury selection, by connection of "plastic airplane cording" to cement buckets, hidden from the view of the jury.

The appearance of a defendant in shackles before a jury in either the guilt phase or the penalty phase of a trial may constitute a violation of the defendant's right to due process. Deck v. Missouri, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). We have held that "a defendant has the right to be free of shackles and handcuffs in the presence of the jury, unless shackling is justified by an essential state interest." Ghent v. Woodford, 279 F.3d 1121, 1132 (9th Cir.2002); see also Rhoden v. Rowland, 172 F.3d 633, 636 (9th Cir.1999) ("Because visible shackling during trial is so likely to cause a defendant prejudice, it is permitted only when justified by an essential state interest specific to each trial."). To demonstrate that his shackling at trial amounted to a constitutional violation,

Petitioner must demonstrate: (1) that he was "physically restrained in the presence of the jury," (2) that "the shackling was seen by the jury," (3) that the "physical restraint was not justified by state interests," and (4) that "he suffered prejudice as a result." Ghent, 279 F.3d at 1132 (citing United States v. Olano, 62 F.3d 1180, 1190 (9th Cir.1995)).

Cox v. Ayers, 613 F.3d 883, 890 (9th Cir. 2010).

In order for the "state interests" criteria to be valid, the court must find that compelling circumstances exist with respect to the maintenance of security, and that less restrictive alternatives must be considered. Id at 890-91.

In this case, government counsel brought up the Marshal's request that both defendants be restrained in the manner indicated except for jury selection. RT Motions in Limine, February 9, 2004 at 24-25. The trial judge, the Honorable Garland E. Burrell Jr., commenced upon the proper inquiry and took evidence that movant's co-defendant had been found in possession of what the deputy marshal thought was a shank. Movant's prior record was a concern. Judge Burrell had the government identify possible alternatives. He also considered whether the deputy marshals could continue the numerosity of their presence which had been planned for jury selection only because of manpower concerns. Movant's counsel stated that he was aware of the (rather minimal restraints) and that he had no problem with them. Id at 27-28. Movant's co-defendant objected primarily on the basis that the shank was not a shank, but also on the lack of in-court disruption by his client. Id. at 28-30. Judge Burrell determined that the shank issue posed a serious concern and that the alternatives identified by the government would be insufficient. Id. at 33. Judge Burrell excepted the jury selection from his restraint ruling.

Movant did not raise the issue on direct appeal, so he was limited in this § 2255 motion to blaming his attorney for not objecting. However, his co-defendant's objection was overruled, and there is no doubt that any objection raised by movant's attorney would have been similarly overruled. One's counsel is not ineffective because he correctly anticipated the ruling of the court. Moreover, movant goes no distance in demonstrating that his rather minimal restraints were ever seen by the jury, a necessary factor in a shackling challenge. Finally, the

undersigned does not find any error with Judge Burrell's restraint ruling that would probably have caused the conviction to be overturned on appeal – if one had been made.

Claim N

Movant states that Roque was ineffective for agreeing to present Hurtado's statement and introducing petitioner's declaration regarding Hurtado. Part of this claim is rather disingenuous as movant has previously argued in claim I that Roque was ineffective for failing to find Hurtado so he could testify. Had Hurtado testified, his statement to police would most likely have been discussed. Regardless, movant has failed to show that Roque was deficient in making these decisions.

At a motion in limine hearing, Roque, the prosecution and the trial court discussed in depth Hurtado's statement, movant's declaration and if and how they should be presented to the jury as Hurtado was unavailable. With respect to Hurtado's statement, Roque stated at the hearing:

> Our position is [movant] had no knowledge of those drugs. There wasn't anything in the relationship that Mr. Hurtado and [movant] had from Vallejo all the way to Sacramento which would indicate that there were any drugs in the car. [. . .]
> But I think it would bolster [movant's] position if this jury knew that there was absolutely no mention of any drugs over an hour and a half period, or two-hour period of time, or three-hour period of time when these two individuals [movant and Hurtado] were together with[out] any relationship to drugs, including phone calls that [movant] may or may not have had with [the co-defendant] prior to the alleged buy/bust.

RT, Motions in Limine at 14.

Roque wanted the jury to know that there was another percipient witness who made observations but was not available to testify. Id. at 18. However, the prosecution was concerned the jury would be confused and would speculate why Hurtado was not a defendant in the case and sought to prevent the introduction of certain aspects of Hurtado's statement or a jury instruction to address the issue. Id. at 6, 15.

\\\\

The trial court noted that presenting Hurtado's statement, and stating he was no longer a defendant without addressing movant's declaration that aided in dismissing the case against Hurtado did not paint a complete picture for the jury. Id. at 16. The trial court noted that one of the reasons Hurtado was not present was due to movant's declaration. Id. at 17. Roque did note that he would prefer not to have movant's declaration mentioned. Id. at 18. The prosecution was opposed to the admission of the Hurtado statement without movant's declaration. Id. at 19. Ultimately, Roque and the prosecution agreed that both the statement and the declaration would be introduced. Id.

As the Supreme Court has emphasized, courts should not second guess counsel, and tactical decisions are almost unassailable. See Strickland, supra. Yet, the background of this claim indicates that Roque made a thoughtful and tactical decision on how to best present movant's defense and it is abundantly clear that his performance was not deficient. That Roque did not succeed in obtaining everything he requested, does not indicate he was ineffective. This claim is meritless and should be denied.

Claim O

Movant argues that Roque was ineffective for failing to properly cross-examine the expert testimony offered by the prosecution. However, while this claim is listed in the table of contents listing movant's claims, he neglected to discuss this claim in detail in the remainder of his motion. Thus, it is not clear what expert testimony movant is referring to. As there is no support for this claim and as movant failed to file a reply which could have addressed the claim, it should be denied.

Claims P & Q

Movant maintains that Roque and appellate counsel failed to present scientific evidence or expert testimony to refute that the substance seized was in fact methamphetamine. Movant also states that Roque was ineffective for stipulating to the drug analysis that confirmed the existence of methamphetamine. Other than these conclsuory allegations movant makes no

statements and provides no evidence to indicate any doubt that the substance seized was methamphetamine. Movant merely argues that counsel should have challenged it, without providing any support that such a challenge would have been successful. Movant also fails to discuss the drug analysis that confirmed the substance was methamphetamine.

The stipulation stated:

> [I]f called, criminalist Jason Hooks from the Sacramento County Crime Laboratory of Forensic Sciences would testify that, using scientifically acceptable methods, he analyzed the substances seized by the police on September 3, 2002 from the trunk of the Honda and found the following: All six bags contained solid material containing methamphetamine in the following net weights, 465 grams, 465 grams, 464 grams, 478 grams, 466 grams and 471 grams.

RT at 187.

Ultimately, movant's defense was based on that he was unaware that there were drugs in the car, so it was reasonable for Roque not to focus his strategy on challenging the chemical tests used to verify that the substance was methamphetamine. See Lemon v. United States, 335 F.3d 1095, 1096 (8th Cir. 2003) (defense counsel's decision to stipulate that controlled substance found in apartment with defendant was crack cocaine was not ineffective assistance; counsel's decision was part of reasonable trial strategy in which counsel sought to disprove element of possession rather than drug type, and stipulation did not prejudice defendant).

Movant's conclusory allegations which are not supported by a statement of specific facts do not warrant relief. See Jones. These claims should be denied.

Claim R

Movant contends that Roque erred at sentencing by not arguing 'sentencing entrapment'. "[S]entencing entrapment or sentence factor manipulation occurs when a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to a greater punishment." United States v. Staufer, 38 F.3d 1103, 1106 (9th Cir. 1994) (internal quotation marks and citations omitted); United States v. Haynes, 216

F.3d 789, 800 n. 9 (9th Cir. 2000) (as amended). In making a sentencing entrapment claim, the burden is on movant to demonstrate that the government engaged in outrageous conduct "which caused the individual to commit a more significant crime for which a greater penalty attaches." United States v. Si, 343 F.3d 1116, 1128 (9th Cir. 2003).

In the instant case, movant has failed to identify any outrageous conduct to support this claim. More importantly, movant has no standing to make this claim as the government informant dealt solely with the co-defendant, Ontiveras. It was Ontiveras who apparently contacted movant to provide the drugs, it was not the government who encouraged movant to commit the crime. As movant's allegations cannot support a viable sentencing entrapment claim, counsel was not ineffective for failing to make this argument at sentencing. This claim should be denied.

Claim S

Movant believes that counsel was ineffective for failing to successfully obtain a downward departure on the grounds of deportability. Movant provides no support for this claim other than stating counsel should have presented the evidence and supporting law, though movant does not identify the evidence or law.

However, counsel sought a downward departure in a motion due to movant's status as a Mexican citizen and noting that movant would not be allowed the same benefits as US citizens in BOP custody, in violation of the Equal Protection Clause. Doc. 91. Counsel further argued this in front of the trial court, but was unsuccessful. RT, Judgment and Sentencing at 9, 14-16. Thus, it is clear that counsel raised this issue and that counsel's argument was unsuccessful will not support this claim, which should be denied.

Claim T

Movant argues that Roque was ineffective for failing to argue for a downward departure on the ground of over representation of movant's criminal history. Petitioner concedes that he had several prior specific offenses for which he was convicted, but argues that the jail

time ran concurrently, therefore counsel should have argued that there was over representation of his history. Movant has four separate distinct arrests on four separate dates that resulted in convictions/jail time that apparently ran concurrently, but which probation listed as separate arrests in the presentence report. On April 9, 1995, movant was arrested for misdemeanor assault, on May 1, 1995, movant was arrested for the transport and sale of a controlled substance, on September 11, 1997, movant was arrested for false identification and resisting arrest and on November 6, 1998, movant was arrested for spousal abuse and chile endangerment. Opposition at 32.

Movant has cited no case law and other than the conclusory nature of his claim has presented no arguments on why a motion arguing for a downward departure for his criminal history would have been sucessful. Respondent also notes that movant was on parole at the time of the instant offense, was in the country illegally and driving without a license. Movant has failed to raise any credible arguments to support this claim and has failed to demonstrate that counsel was ineffective. This claim should be denied.

Claim U & V

Movant argues that counsel was ineffective for failing to challenge the use of movant's prior drug conviction[22] with respect to the sentencing enhancement, 21 U.S.C. § § 841(a)(1)(C), 851 (10 year enhancement), and counsel should have argued prosecutorial misconduct when the prosecution used his prior drug conviction. Movant does not argue that the prosecution failed to follow the procedural guidelines of the statute, rather it appears that movant argues the statute is unfair. Movant argues the statute was written to punish only those with prior drug convictions which have been final for over five years. Movant misreads the statute of limitations of § 851(e) which precludes collateral challenges to the validity of the prior conviction if the conviction is over five years old. This section does not aid movant as recent

_____

[22]See Information filed on February 25, 2003.

1  valid convictions are as usable as old convictions.  Moreover, the statute has been upheld on

2  court review.  U.S. v. Jensen, 425 F.3d 698 (9th Cir. 2005).

3          In a related vein, movant also seems to set forth an argument concerning 21

4  U.S.C. § 851(e), which states: "[n]o person who stands convicted of an offense under this part

5  may challenge the validity of any prior conviction alleged under this section which occurred

6  more than five years before the date of the information alleging such prior conviction."  Movant

7  seems to argue that this part of the law is unfair and the prosecution waited until movant's prior

8  conviction was five years old before filing this charge.  Though, movant provides no support for

9  these contentions.  Regardless, it was held that this five year time period did not violate due

10 process or equal protection, and thus such convictions were not subject to proof beyond a

11 reasonable doubt before they could be used to enhance a defendant's sentence.  See United States

12 v. Davis, 36 F.3d 1424, 1438-39 (9th Cir. 1994).

13         Movant argues that the prosecution used this enhancement because he did not

14 plead guilty and proceeded to trial and counsel should have presented this argument.  However,

15 any such argument would have been meritless, and relies on speculation that the U.S. Attorney

16 would not have utilized the prior conviction on a guilty plea.  The prosecution has the discretion

17 to use movant's prior drug conviction and did not abuse its discretion in choosing to do so.

18 Movant's sole argument that the prosecution did not have to use the prior conviction is frivolous

19 and does not support a claim of ineffective assistance of counsel.

20         Claim X[23]

21         Movant argues that the district court erred in classifying methamphetamine as a

22 schedule II controlled substance.  However, this claim was not brought on direct review and is

23 therefore procedurally defaulted, as movant has failed to demonstrate cause and prejudice.

24 United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584 (1982) (noting that a motion to vacate

25

26         [23] There is no claim W in the motion.

or modify a sentence under 28 U.S.C. § 2255 cannot be used as a substitute for a direct appeal).

In any event, methamphetamine is a Schedule II drug.  United States v. Raygosa-Esparza, 566 F.3d 852, 854 (9th Cir. 2009).[24]  Therefore, this claim should be denied.

Claim Y

Finally, movant alleges that Roque was ineffective for not being present at sentencing and another attorney with no knowledge of movant was forced to represent him for sentencing.  However, the facts clearly contradict movant's baseless claim.  At approximately, 4:45 pm on February 12, 2004, the jury sent a note to the court that a verdict had been reached. RT at 572-74.  At that time Roque was not available to appear in court, so the court ended for the day without reading the verdict.  The only time another attorney stood in for movant was when court was adjourned on February 12, 2004.  Roque appeared the next morning, February 13, 2004, and the verdict was read.  Mr. Roque was present at sentencing and judgment on May 14, 2004.  RT, Judgment and Sentencing.  Movant's claim is entirely frivolous and meritless and should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Movant's motion to vacate, correct or set aside his sentence pursuant to 28 U.S.C. § 2255 (Doc. 176) be denied; and

2.  The clerk of the court be directed to close the companion civil case No. CIV S-09-2876 GEB GGH.

If petitioner files objections, he shall also address if a certificate of appealability should issue and, if so, as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of appealability must "indicate which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).

---

[24]Amphetamine is a Schedule III drug.  21 U.S.C. § 812, Schedule III, (a)(1).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 20, 2011

<u>      /s/ Gregory G. Hollows      </u><br>
UNITED STATES MAGISTRATE JUDGE

GGH: AB
lope0418.hc